DRAWL, Appellant,

v.

CORNICELLI, Appellee, et al.

[Cite as *Drawl v. Cornicelli* (1997), 124 Ohio App.3d 562.]

Court of Appeals of Ohio,
Eleventh District, Lake County.

No. 97–L–027.

Decided Dec. 26, 1997.

*Merrie Frost*, for appellant.

*Steven J. Miller* and *James E. Goodrich*, for appellee.

---

NADER, Judge.

In this accelerated-calendar case, plaintiff-appellant, Leila D. Drawl, appeals a judgment of the Lake County Court of Common Pleas granting the motion for summary judgment of defendant-appellee, Diane Cornicelli, M.D.

In 1993, appellant filed a sexual-harassment complaint against her former employer, Faissal Zahrawi, M.D. Around that time, she was receiving medical treatment from appellee for psychological problems associated with her past employment with and alleged sexual harassment by Dr. Zahrawi.

During that litigation, Dr. Zahrawi subpoenaed appellant's medical records from appellee. Appellee's office responded by producing certain documents in February 1994. After her medical records were supplied to Dr. Zahrawi, appellant went to appellee for a checkup in August 1994.

When the case proceeded to trial, appellant called appellee to testify as to her medical and psychological condition and damages. Appellee had in her possession appellant's most current medical records, which included the notes from appellant's August 1994 visit. During Dr. Zahrawi's cross-examination of appellee, it became increasingly clear that the records supplied to Dr. Zahrawi's counsel were different from those records appellee brought to trial. The differences were additions that appellee had made to appellant's medical chart regarding "sexual harassment" by appellant's former employer; the records supplied in February 1994 contained no mention of "sexual harassment." At all

times, appellee maintained that she was unaware of the subpoena for appellant's medical records and her office's response to it in February 1994.

When asked on cross-examination to speculate about the differences in the records, appellee stated her staff may have "blocked out" some "damaging" information. As a result of an adept cross-examination on the differences in the medical records, appellee's effectiveness as a witness for appellant was seriously hampered and her credibility was severely damaged. Appellant's counsel admitted in open court that she had never seen *any* of the medical records in question.

The jury in the sexual-harassment suit found in favor of Dr. Zahrawi. After her loss in that suit, appellant filed suit against appellee on September 8, 1995, claiming *inter alia* intentional interference with and spoliation of evidence.[1] She alleged that as a direct result of appellee's intentional alteration of appellant's medical records, appellant lost her suit against Dr. Zahrawi. Appellee answered and asserted a counterclaim, seeking payment for medical services rendered.

On December 13, 1996, appellee filed a motion for summary judgment, claiming that there was no evidence (1) that appellee willfully destroyed evidence with the intent to disrupt appellant's case and (2) that appellant suffered damages proximately caused by appellee's alleged destruction of evidence. To her motion, appellee attached her affidavit, in which she stated that the difference in the records was a result of her updating appellant's records after the August 1994 visit to accurately reflect appellant's condition, a transcript of her trial testimony in the case against Dr. Zahrawi, and the two sets of medical records at issue. Appellant filed a memorandum in opposition to the motion, attaching a transcript of appellee's trial testimony, a letter from a Dr. Patrick R. Dennison, in which he opined that appellee did not conform to medical standards in "altering" appellant's medical records, several articles purporting to establish the standard for medical record-keeping, and appellant's affidavit.

The trial court granted appellee's motion for summary judgment on January 17, 1997, concluding that appellant had failed to meet her burden to supply evidence that appellee willfully destroyed evidence with the intent to disrupt appellant's case against Dr. Zahrawi; the court did not address the issue of causation. Appellee's counterclaim remains pending in the court below.[2]

---

1. Her complaint also included four other claims that were dismissed by the trial court on February 27, 1996, as a result of appellee's motion to dismiss. The complaint also named appellee's employee, Michelle Daniels (n.k.a., Michelle Siedel), as a defendant for her role in providing and allegedly altering the medical records in question. The complaint against Daniels was voluntarily dismissed by appellant on September 4, 1996.

2. Although a claim remains pending in the lower court, this is a final appealable order because the judgment entry contains the required Civ.R. 54(B) language "There is no just cause for delay."

Appellant timely appealed, claiming the following as error:

"[1.] The trial court erred in granting summary judgment to defendant-appellee[,] Diane Cornicelli[,] based on its finding that plaintiff-appellant[,] Leila Drawl[,] failed to demonstrate that 'Dr. Cornicelli willfully destroyed evidence.'

"[2.] The trial court erred in granting summary judgment to defendant-appellee[,] Diane Cornicelli[,] based on its finding that plaintiff-appellant failed to demonstrate that defendant-appellee 'had designs or intentions to disrupt the plaintiff's case.['] "

Because this appeal is from a trial court's order granting appellee's motion for summary judgment, we begin by enunciating the standard by which courts are bound in ruling on summary judgment motions. Civ.R. 56(C) provides that a party's summary judgment motion will be granted if (1) there are no genuine issues of material fact and (2) the movant is entitled to judgment as a matter of law. See *Dresher v. Burt* (1996), 75 Ohio St.3d 280, 293, 662 N.E.2d 264, 273–274. When the movant successfully meets this burden, the burden shifts to the nonmoving party to point to or produce evidence that creates a genuine issue of material fact; she is not permitted to rest on the allegations in her complaint. *Id.* Our standard of review in determining the propriety of a trial court's decision on this issue is *de novo*, viewing the evidence in a light most favorable to the nonmovant—appellant, in this case. *Williams v. First United Church of Christ* (1974), 37 Ohio St.2d 150, 151–152, 309 N.E.2d 924, 925–926.

The origin of the spoliation cause of action is a California case, *Solano Cty. v. Delancy* (Cal.App.1989), 264 Cal.Rptr. 721. A number of other jurisdictions have since recognized it as an actionable tort. See *Viviano v. CBS, Inc.* (N.J.Super.1991), 251 N.J.Super. 113, 597 A.2d 543, 550 (collecting case law from these other jurisdictions).

To recover on a claim for interference with or destruction of evidence (also referred to as spoliation of evidence), a plaintiff must prove *all* of the following elements: "(1) pending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, (3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case, (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts." *Smith v. Howard Johnson Co., Inc.* (1993), 67 Ohio St.3d 28, 29, 615 N.E.2d 1037.

The Supreme Court of Ohio formally recognized this cause of action in tort in 1993 when the United States District Court for the Southern District of Ohio, Eastern Division, posed the query "Does Ohio recognize a claim for intentional or negligent spoliation of evidence and/or tortious interference with prospective civil

litigation?" *Id.* Since the court's pronouncement in *Smith,* there has been a dearth of case law in Ohio interpreting this cause of action.

The troublesome element in this matter, the element upon which the trial court's judgment was based, is the third element: willful destruction of evidence by the defendant-appellee designed to disrupt the plaintiff-appellant's case. For her first assignment of error, appellant contends the trial court erred in granting appellee's motion for summary judgment and concluding that she failed to present evidence that appellee willfully destroyed evidence. Her argument here is twofold: (1) it matters not that *she* did not formally submit the medical records in the underlying case, and (2) the evidence showed that the documents were intentionally altered by either appellee or her staff. Because it is dispositive of this appeal, we will address appellant's second argument in support of her first assignment of error.

To establish her spoliation claim, appellant was required to demonstrate that appellee willfully destroyed, altered, or concealed evidence. The concept of "willfulness" contemplates not only an intentional commission of the act, but also a *wrongful* commission of the act. Black's Law Dictionary (6 Ed.1990) 1599, defines the term "willful" to include the following:

"Premeditated; malicious; done with evil intent, or with a bad motive or purpose * * *.

"An act * * * is 'willfully' done, if done voluntarily and intentionally and with the specific intent to do something the law forbids * * *; that is to say, with bad purpose * * *."

This is especially true in the case of *alteration* of evidence, because if the cause of action merely required a showing that the defendant intentionally altered evidence, the process of updating documentary evidence in the normal course of business would be halted pending the outcome of a case. In the case of medical records, physicians would be unable to update their records when necessary and appropriate for fear of a potential spoliation claim. This standard necessarily requires more than mere negligence or failure to conform to standards of practice. It contemplates an intentional, wrongful act.

Appellee maintains that the Supreme Court limited this cause of action to one for *destruction* of evidence in *Smith.* We disagree. In response to the federal court's query regarding spoliation, the *Smith* court established the essential elements of a claim for *"interference with* or destruction of evidence." The court did not limit this action to one for destruction of evidence; also included was the concept of interference with evidence. In doing so, the court cited, with approval, a case from the New Jersey Superior Court, *Viviano v. CBS,*

*Inc., supra,* which dealt with *concealment* of evidence. Moreover, our research reveals that the cases dealing with this relatively new cause of action have applied the test to cases of destruction, alteration, and concealment of evidence. See *Moskovitz v. Mt. Sinai Med. Ctr.* (1994), 69 Ohio St.3d 638, 635 N.E.2d 331 (alteration of medical records), and *Cechowski v. Goodwill Industries of Akron, Ohio, Inc.* (1997), Summit App. No. 17944, unreported, 1997 WL 270523 (destruction of interoffice documents). See, also, *Viviano,* 251 N.J.Super. 113, 597 A.2d 543 (concealment of interoffice documents); *Delancy,* 264 Cal.Rptr. 721 (destruction of evidence of automobile accident); *Henry v. Deen* (1984), 310 N.C. 75, 310 S.E.2d 326 (alteration of medical records). We think this is correct in light of the meaning of the term "spoliation," which encompasses not only mere destruction, but also "significant and meaningful alteration." Black's Law Dictionary (6 Ed.1990) 1401.

For these reasons, we conclude that the tort of interference with or destruction of evidence requires a showing of a willful (*i.e.,* wrongful) destruction, alteration, or concealment of evidence.

■ With this standard in mind, we turn to the evidence in this case. In support of her motion for summary judgment, appellee attached her affidavit, in which she averred that she, *in the normal course of her medical record-keeping,* merely *updated* appellant's medical records so they accurately reflected appellant's condition and treatment. Viewing this in a light most favorable to appellant, nothing sinister or wrongful can be perceived or gleaned from this testimony alone. Appellee's affidavit was sufficient to meet her burden of showing the absence of a genuine issue of fact and showing that she was entitled to judgment, as a matter of law, on appellant's spoliation claim.[3] Therefore, the burden shifted to appellant to point to or produce Civ.R. 56(C) evidence to create a genuine issue of material fact or to show that appellee was not entitled to judgment as a matter of law.

In response to appellee's motion, appellant attached to her memorandum a transcript of appellee's testimony in the underlying case against Dr. Zahrawi, which stated that her staff "took liberties" with the records, a letter from another physician, Dr. Patrick Dennison, and copies of medical literature purporting to dispute the propriety of appellee's "alterations" as being against the normal practice of medical record-keeping. Appellant also attached her own affidavit, in which she testified that appellee had motivations to damage Dr. Zahrawi's defense. But appellant's allegation of malice does not negate or even call into

---

**3.** Appellee also attached the transcript of her testimony and the two sets of medical records at issue in this case to her motion. Because her affidavit alone was sufficient to meet her *Dreshler* burden, these documents are not considered in ruling on the merits of this appeal.

question appellee's testimony that she merely *updated* appellant's medical records in the normal course of her record-keeping. Moreover, neither the letter from Dr. Dennison nor the copies of the medical literature were introduced properly for consideration. Nor was the transcript of appellee's testimony in the underlying case properly submitted.

Civ.R. 56(C) provides the *exclusive* list of documentary evidence to support a summary judgment motion: affidavits, deposition, answers to interrogatories, written admissions, transcripts of evidence in the pending case, and written stipulations. No other evidence may be considered. Civ.R. 56(C). Other documentary evidence may be admitted; however, the appropriate method to introduce this evidence is by way of an affidavit that complies with Civ.R. 56(E). *Martin v. Cent. Ohio Trans. Auth.* (1990), 70 Ohio App.3d 83, 89, 590 N.E.2d 411. Aside from appellant's ineffectual affidavit, the evidence presented in support of appellant's position was not specifically authorized by Civ.R. 56(C) [4] and was not introduced by virtue of a properly framed affidavit. Consequently, appellant failed to meet her burden under *Dresher*, because there is no evidence properly included in the record that demonstrates appellee *wrongfully spoliated* the medical records in the underlying case.[5] Because appellant failed to present evidence on an essential element of her spoliation claim, the trial court correctly granted appellee's motion for summary judgment.

Appellant's first assignment of error is overruled. Her remaining assignment of error is moot.

Although it is technically moot, we note that appellant's second assignment of error is also meritless. Notwithstanding appellant's attempt to apply the doctrine of transferred intent to this cause of action, the Supreme Court of Ohio stated in *Smith v. Howard Johnson Co., Inc.,* that plaintiff must demonstrate that the alleged spoliator intended to "disrupt the *plaintiff's* case." (Emphasis

---

**4.** Regarding the transcript of appellee's testimony in the case against Dr. Zahrawi, neither party separately filed the transcript in this case, although both parties attached various portions of appellee's testimony to their multiple motions throughout this trial. Nor did either party properly authenticate the partial transcripts by affidavit or otherwise. As such, the transcript of appellee's testimony in the underlying suit was not properly before the trial court and is not properly before us for consideration. See *Cent. Trust Co. v. Guttman* (May 21, 1986), Hamilton App. No. C–850460, unreported, 1986 WL 5964.

**5.** Even though a trial court *may* consider evidence not authorized by Civ.R. 56(C) where there is no objection made, reviewing courts will presume that the court considered only evidence properly submitted unless it appears clear from the record that the court, in fact, relied upon improper materials. See *Chambers v. St. Mary's School* (June 27, 1997), Geauga App. No. 96–G–2013, unreported, at 6, 1997 WL 401555. There is no indication on this record that the trial court considered improper materials; therefore, we presume that only proper Civ.R. 56(C) materials were considered when the court ruled on appellee's motion for summary judgment.

added.) *Id.,* 67 Ohio St.3d at 29, 615 N.E.2d at 1038. There is no basis to conclude that the Supreme Court intended that the doctrine of transferred intent would apply to a cause of action for spoliation of evidence. Nor did we uncover any case, in our research, in which this doctrine was applied to a spoliation claim. There is no evidence that appellee intended to disrupt appellant's case. Rather, in her own affidavit, appellant avers that any alleged wrongdoing was a result of an intent to injure Dr. Zahrawi's position, not appellant's.

The judgment of the Lake County Court of Common Pleas is affirmed.

*Judgment affirmed.*

CHRISTLEY, P.J., and WILLIAM M. O'NEILL, J., concur.