[Cite as *Owens v. Bridgestone*, 2020-Ohio-5156.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Dale A. Owens et al., | : | |
| Plaintiffs-Appellants, | : | |
| | | No. 19AP-608 |
| v. | : | (CPC No. 18CV-9788) |
| Bridgestone Americas, Inc. | : | (REGULAR CALENDAR) |
| d.b.a Firestone Complete Auto Care | | |
| Hilliard, et al., | : | |
| Defendants-Appellees. | : | |

D E C I S I O N

Rendered on November 3, 2020

**On brief:** *Granger Co., L.P.A.*, and *Mark S. Granger, Esq.,* for appellants. **Argued:** *Mark S. Granger*.

**On brief:** *Porter, Wright, Morris & Arthur LLP, Elizabeth Moyo, Esq.,* and *Jason T. Gerken, Esq.,* for appellee Bridgestone Retail Operations, LLC. **Argued**: *Elizabeth Moyo.*

APPEAL from the Franklin County Court of Common Pleas

BEATTY BLUNT, J.

{¶ 1} Plaintiffs-appellants Dale A. Owens and Michelle R. Owens appeal from the August 5, 2019 decision and August 13, 2019 final judgment entry issued by the Franklin County Court of Common Pleas granting the motion for summary judgment of defendant-appellee Bridgestone Retail Operations, LLC ("BRO") and dismissing appellants' complaint with prejudice. For the following reasons, we affirm.

## I. Facts and Procedural History

{¶ 2}  The facts of the instant matter are largely undisputed and are evinced in the record as follows.  Appellants filed their complaint on November 26, 2018. (November 26, 2018 Compl.) The complaint sets forth one cause of action for spoliation of evidence against BRO[1].  (Compl. at ¶ 18-23.)

{¶ 3}  According to the complaint, Dale Owens was employed by BRO at 1891 Hilliard-Rome Road, Hilliard, Ohio, 43026. (Compl. at ¶ 10.) On or about March 1, 2014, Mr. Owens attempted to inflate a snow thrower tire which was allegedly manufactured by MTD Products, Inc.  (*Id.* at ¶ 11.) While attempting to inflate the tire, the plastic rim exploded, causing severe injury to Mr. Owens. (*Id.* at ¶ 12.) Immediately after the incident, Jay Tapia, Mr. Owens' boss, took possession of the tire rim. (Owens Aff. at ¶ 2.)

{¶ 4}  Subsequently, Mr. Owens applied for, and was awarded, workers' compensation benefits as a result of his March 2014 work-related injuries.  The expense of the workers' compensation benefits awarded to Mr. Owens was borne by BRO. (Fulton Aff. at ¶ 12. attached to Apr. 1, 2019 Def.'s Mot. for Summ. Jgmt.) In addition, during the pendency of the workers' compensation claim proceedings before the Industrial Commission of Ohio, Mr. Owens also filed an application for an additional award based on violation of specific safety requirements ("VSSR") by BRO. (Owens Aff. at ¶ 4; Fulton Aff. at ¶ 9.)

{¶ 5}   The VSSR claim ultimately resolved via a Settlement of Claimed Violation of Specific Safety Requirement (hereinafter the "VSSR Settlement".) (Owens Aff. at ¶ 5; Fulton Aff. at ¶ 13-14 & Ex. G.) Mr. Owens executed the VSSR Settlement, which included a release of "all other claims, actions, causes of actions, suits and/or demands, whether said claims, actions, causes of actions, suits and/or demands are at law or in equity, state or federal, punitive or actual, past, present or future, which the Injured Worker may have or allege to have against the Employer * * *."  (Fulton Aff., Ex. G at ¶ 5.)

{¶ 6} Throughout the workers' compensation proceedings, including the application for a VSSR award, Mr. Owens named as his employer Bridgestone Americas

---

[1] BRO was incorrectly named in the complaint as "Bridgestone Americas, Inc. d.b.a. Firestone Complete Auto Care Hilliard" and "Bridgestone Retail Operations, LLC d.b.a Firestone Complete Auto Care - Hilliard". (Dec. 19, 2018 Consent to Plead.)

Holdings ("BAH".) (Owens Aff. at ¶ 3; Fulton Aff. at ¶ 8-9.) Mr. Owens believed that BAH was his employer for workers' compensation purposes. (Owens Aff. at ¶ 3). However, BAH did not exist at any time while Mr. Owens' workers' compensation and VSSR claims were pending, and at no time was Mr. Owens employed by BAH. (Fulton Aff. at ¶ 10-11.) Instead, at all relevant times Mr. Owens was employed by BRO. (Fulton Aff. at ¶ 11; Compl. at ¶ 10.) Furthermore, BRO bore the expense of the workers' compensation benefits and paid the consideration for the VSSR Settlement. (Fulton Aff. at ¶ 12, 14.)

{¶ 7}   Meanwhile, separate and apart from the workers' compensation proceedings discussed above, on March 1, 2016, appellants herein initiated an action against MTD Products, Inc. in the Franklin County Court of Common Pleas, Case No. 16CV-2158 (the "MTD case"), alleging products liability for failure to warn; defective design; failure to conform to design; breach of implied warranty; and loss of consortium.  (Compl. at ¶ 19.) For ease of comprehension, we provide the following timeline of events in the MTD case:

- March 1, 2016:  Appellants file the MTD case. (Compl. at ¶ 19.)

- On or about November 15, 2016:  Appellants serve by mail a subpoena duces tecum upon BRO via one of BRO's workers' compensation attorneys, seeking production of the remnants of the tire and rim. (Compl. at 20[2] & Ex. 1: Fulton Aff. at ¶ 4 & Ex. A.)

- On or about November 28, 2016:  Counsel for BRO advises appellants, by letter, that BRO "does not have the snow thrower tire." (Compl. at ¶ 21 & Ex. 2; Fulton Aff. at ¶ 5 & Ex. B.)

- March 1, 2018:  Appellants file Plaintiffs Motion to Amend Case Schedule to both continue the trial date and amend their complaint to add BRO as a defendant in order to assert a claim for spoliation of evidence. (Fulton Aff. at ¶ 6 & Ex. C.)

- March 7, 2018:  The trial court issues its Decision and Entry Denying Plaintiff's [sic] Motion to Amend Case Schedule in which the trial court denies the motion as being untimely. (Fulton Aff. at ¶6 & Ex. D.)

---

[2] The Complaint contains duplicate paragraphs numbered as "20". This allegation wasmade in the second such "paragraph 20".

- <u>March 8, 2018</u>: Appellants file a voluntary dismissal, without prejudice, of the MTD case pursuant to Civ.R. 41(A)(1)(a).

{¶ 8} Having thus been thwarted in their attempts to add BRO as a defendant in the MTD case, and as set forth previously, the Owenses filed their complaint against BRO in the within matter on November 26, 2018, asserting one cause of action for spoliation of evidence. On January 23, 2019, BRO filed a motion to dismiss pursuant to Civ.R. 12(B)(6). On March 18, 2019, the trial court issued an order converting the motion to dismiss to a motion for summary judgment pursuant to Civ.R. 12(B) and setting a briefing schedule.

{¶ 9} Thereafter, on April 1, 2019, BRO filed a motion for summary judgment. The Owenses filed a memo contra on April 15, 2019, and on April 22, 2019 BRO filed its reply. On August 5, 2019, the trial court issued its decision granting BRO's motion for summary judgment, and on August 13, 2019 the trial court issued its final judgment entry entering judgment in favor of BRO and against appellants on all claims and dismissing the complaint with prejudice.

{¶ 10} This timely appeal followed.

## II. Assignments of Error

{¶ 11} Appellants assign two errors for our review:

> [I.] The trial court erred in granting appellees' motion for summary judgment on the basis that a party to a primary, first party action is limited to bringing a claim for spoliation against a third party only in the primary action only.
>
> [II.] The trial court erred in granting appellees' motion for summary judgment on the basis that the VSSR release bars Owens' <u>future</u> spoliation claim.

(Emphasis sic.)

## III. Discussion and Legal Analysis

### A. Standard of Review

{¶ 12} An appellate court reviews summary judgment under a de novo standard. *You* v. *Northeast Ohio Med. Univ.*, 10th Dist. No. 17AP-426, 2018-Ohio-4838, ¶ 16, quoting *Brisco v. U.S. Restoration & Remodeling, Inc.*, 10th Dist. No. 14AP-533, 2015-Ohio-3567,

¶ 19, citing *Coventry Twp. v. Ecker*, 101 Ohio App.3d 38, 41 (9th Dist.1995). Summary judgment is proper only when the parties moving for summary judgment demonstrate: (1) no genuine issue of material fact exists; (2) the moving parties are entitled to judgment as a matter of law; and (3) reasonable minds viewing the evidence most strongly in favor of the nonmoving party could reach but one conclusion, and that conclusion is adverse to the nonmoving party. Civ.R. 56; *State ex rel. Grady v. State Emp. Relations Bd.*, 78 Ohio St.3d 181 (1997).

{¶ 13} The party moving for summary judgment bears the initial burden of informing the trial court of the basis for the motion and identifying those portions of the record demonstrating the absence of a genuine issue of material fact by pointing to specific evidence of the type listed in Civ.R. 56(C). *Dresher v. Burt*, 75 Ohio St.3d 280, 293 (1996). If the moving party fails to satisfy its initial burden, the court must deny the motion for summary judgment; however, if the moving party satisfies its initial burden, summary judgment is appropriate unless the nonmoving party responds, by affidavit or as otherwise provided under Civ.R. 56, with specific facts demonstrating a genuine issue exists for trial. *Id.*; *Hall v. Ohio State Univ. College of Humanities*, 10th Dist. No. 11AP-1068, 2012-Ohio-5036, ¶ 12, citing *Henkle v. Henkle,* 75 Ohio App.3d 732, 735 (12th Dist.1991).

{¶ 14} A fact is "material" if it "might affect the outcome of the suit under the applicable substantive law." *Mitchell v. Mid-Ohio Emergency Servs., L.L.C.*, 10th Dist. No. 03AP-981, 2004-Ohio-5264, ¶ 12. A "genuine" issue of material fact exists to prevent summary judgment only if "a reasonable jury could find that the evidence satisfies the evidentiary standards required at trial." *Myocare Nursing Home, Inc. v. Fifth Third Bank*, 98 Ohio St.3d 545, 2003-Ohio-2287, ¶ 33. Additionally, a nonmovant's own self-serving assertions, whether made in an affidavit, deposition or interrogatory responses, cannot defeat a well-supported summary judgment when not corroborated by any outside evidence. *White v. Sears, Roebuck & Co.*, 10th Dist. No 10AP-294, 2011-Ohio-204, ¶ 7.

{¶ 15} Finally, "[t]rial courts should award summary judgment with caution, being careful to resolve doubts and construe evidence in favor of the nonmoving party." *Welco Industries, Inc. v. Applied Cos.*, 67 Ohio St.3d 344, 346 (1993), citing *Murphy v. Reynoldsburg*, 65 Ohio St.3d 356 (1992). "Even the inferences to be drawn from the underlying facts contained in the evidentiary materials, such as affidavits and depositions,

must be construed in a light most favorable to the party opposing the motion." *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482, 485 (1998), citing *Turner v. Turner*, 67 Ohio St.3d 337, 341 (1993).

## B.  The Owenses' Second Assignment of Error

{¶ 16}  Because we find it dispositive to resolving this appeal, we begin by addressing appellants' second assignment of error.  In their second assignment of error, appellants assert that the trial court erred in granting BRO's motion for summary judgment on the basis that the VSSR release bars Mr. Owens' future spoliation claim.  We disagree.

{¶ 17}  "A release of a cause of action for damages is ordinarily an absolute bar to a later action on any claim encompassed within the release."  *McBroom v. Safford*, 10th Dist. No. 11AP-885, 2012-Ohio-1919, ¶ 12, citing *Haller v. Borror Corp.*, 50 Ohio St.3d 10, 13 (1990).  A release is a contract; thus, "the overriding consideration in interpreting a release is to ascertain the intent of the parties, which intent is presumed to reside in the language the parties chose to employ in the agreement."  *Id.*, citing *generally Whitt v. Hutchison*, 43 Ohio St.2d 53 (1975); *Fabrizio v. Hendricks*, 100 Ohio App.3d 352 (11th Dist.1995).  A court may not resort to extrinsic evidence in its effort to give effect to the intentions of the parties "unless the language in a contract is unclear or ambiguous, or where the circumstances surrounding the agreement invest the language of the contract with a special meaning."  *Id.*, citing *Kelly v. Med. Life Ins. Co.*, 31 Ohio St.3d 130, 132 (1987).  "Further, absent fraud or mutual mistake, broadly-worded releases are generally construed to include all prior conduct between the parties, even if the scope of such conduct or its damage is unknown to the releasor."  *Id.*, citing *Denlinger v. Columbus*, 10th Dist. No. 00AP-315 (Dec. 7, 2000), citing *Task v. Natl. City Bank*, 8th Dist. No. 65617 (Feb. 10, 1994) (finding that, given the broad language of the release, it was incumbent upon the releasor to ascertain at the time of the release whether he had any causes of action against defendant and, if so, to expressly manifest his intent to exclude those claims from the scope of the release).

{¶ 18}  Furthermore, although releases from liability for future tortious conduct are generally disfavored by the law and will be narrowly construed, such releases are nonetheless routinely applied by courts to bar future tort liability where the intent of the parties is stated in clear and unambiguous terms.  *McBroom* at ¶ 13, citing *Denlinger*,

citing *Swartzentruber v. Wee-K Corp.*, 117 Ohio App.3d 420, 424 (4th Dist.1997) (language releasing livery stable from "any and all claims" that arose out of "any and all personal injuries" was sufficiently clear and specific to bar injured horseback rider's negligence claims); *Conkey v. Eldridge*, 10th Dist. No. 98AP-1628 (Dec. 2, 1999) (language in rental agreement releasing owner from "all liability for personal injuries, property damage, loss from theft, vandalism, fire, water, explosion, rodent damage, or any other causes" was sufficiently specific and clear to bar renter's claim arising out of theft of race car stored on owner's property); *Jacob v. Grant Life Choices Fitness Ctr.*, 10th Dist. No. 95APE12-1633 (June 4, 1996) (language in membership agreement releasing fitness center from liability for any injury or damage including damages resulting from negligence of fitness center barred member's negligence claims against fitness center).

{¶ 19} The VSSR Settlement release at issue here provides:

> [T]he Injured worker also agrees, as a part of the consideration stated herein, that this agreement shall also provide for a full and final settlement of any and all other claims, actions, causes of actions, suits and/or demands, whether said claims, actions, causes of actions, suits and/or demands are at law or in equity, state or federal, punitive or actual, past, present, or future, which the Injured Worker may have or allege to have against the Employer, or any of its employees, managers, and/or staff, including, but not limited to employment claims, employment-related claims, claims for wrongful discharge and/or any allegations of discrimination that he has or may allege that he has against the Employer.

(Fulton Aff., Ex. G at 2, ¶ 5,)

{¶ 20} We find that the language of the release clearly and unambiguously includes Mr. Owens' claim for spoliation of evidence. It includes any and all other claims between the parties, including future claims. It is broadly worded to be inclusive of all claims and does not specifically exclude any type of claim. As set forth above, we have previously cited favorably to the Eighth District Court of Appeals decision in *Task*, which held that a person executing a broadly worded release has a duty to investigate whether there are certain claims he or she wishes to exclude from the scope of the release. *McBroom* at ¶ 12. We see no reason to depart from this reasoning in the case before us now.

{¶ 21} The VSSR Settlement which contained the release was signed by Mr. Owens on September 12, 2016. (Fulton Aff., Ex. G at 3.) When the VSSR Settlement was signed, the Owenses' case against MTD had been pending for over six months. (*Id.*, Ex. E.) The workplace accident occurred on or about March 1, 2014, over two years before the VSSR Settlement, including the release, was executed. (Compl., ¶ 19.) Thus, we find there had been more than sufficient time to investigate whether Mr. Owens had any claims he would wish to exclude from the language of the release. Furthermore, in negotiating and executing the VSSR Settlement, including the release, Mr. Owens was represented by counsel. (*See* Fulton Aff., Ex. G: Auth. To Receive Workers' Comp. Check.) Therefore, it is presumed that Mr. Owens was aware of the full scope and terms of the VSSR Settlement release. *Task*, 8th Dist. No. 65617 ("when the parties have negotiated the release with the assistance of legal counsel, and both sides have agreed to the language included in the release, there is an assumption that the parties are fully aware of the terms and scope of their agreement").

{¶ 22} Nevertheless, the Owenses argue in their brief that it was error for the trial court to have granted summary judgment because there were at the very least issues of fact concerning whether the parties intended the release to encompass claims for intentionally tortious conduct that might occur after the execution of the release. But this is precisely what a future claim is. And, as the trial court aptly pointed out, "[w]hile Mr. Owens did not know that the tire and rim were not in Bridgestone's possession at the time the agreement was signed, the MTD action alleging defect had been pending since March 1, 2016 and the accident had occurred over two years prior on or about March 1, 2014. No requests for those items were made by [the Owenses] prior to November 15, 2016." (August 5, 2019 Decision at 13, citing Fulton Aff., Ex. A.) Pursuant to the reasoning set forth in *Task*, Mr. Owens' "lack of diligence in ascertaining whether he had other claims and his consequent lack of knowledge of his rights and the legal effect of the scope of the release are not grounds to relieve him of the effect of the release." (*Task*, 8th Dist. No. 65617)

{¶ 23} The Owenses specifically point to the November 28, 2016 letter from counsel for BRO advising that BRO "does not have the snow thrower tire". (Fulton Aff., Ex. B) as evidence that neither of the parties knew the tire rim parts had been destroyed at the time the release was executed, and therefore they did not intend the release to include a future

spoliation claim. But the November 28, 2016 letter does not present evidence of when the alleged spoliation actually occurred, or even when BRO first became aware that it was not in possession of the tire rim parts, facts which would be essential to establish in order for appellants to prevail in avoiding the release based on either a mutual mistake or fraudulent inducement theory. Indeed, the Owenses are attempting to rely on the November 28, 2016 letter both as evidence that BRO destroyed the tire rim *after* the execution of the release, which would support a theory of mutual mistake, and as evidence that BRO had *already* destroyed the tire rim at the time of the execution of the release, which would support a theory of fraudulent inducement. Although the internally inconsistent argument is somewhat perplexing, it is unavailing in any event because the letter constitutes evidence of neither. Furthermore, there is no other evidence in the record which would support the Owenses' assertion that the tire and rim were destroyed by BRO subsequent to the parties' mutual execution of the VSSR Settlement and release. In short, the Owenses have pointed to no evidence in the record which would raise any genuine issue of material fact regarding whether the parties intended the release to encompass the Owenses' claim of spoliation, and it was not error for the trial court to grant summary judgment in favor of BRO.

{¶ 24} Finally, we briefly address appellant Michelle Owens' loss of consortium claim. Ms. Owens' claim for loss of consortium is derivative of the Owenses' claim for spoliation of evidence. *Gordon v. Ohio State Univ.*, 10th Dist. No. 10AP-1058, 2011-Ohio-5057, ¶ 80. Thus, because summary judgment was proper on the spoliation claim, the trial court was correct in granting summary judgment in favor of BRO on Ms. Owens' loss of consortium claim.

{¶ 25} In summation, we find the trial court did not err in finding that the Owenses' claim for spoliation of evidence was barred by the VSSR Settlement release executed by Mr. Owens, and the trial court properly granted BRO's motion for summary judgment pursuant to Civ.R. 56(C) on this basis. Accordingly, we overrule the Owenses' second assignment of error.

## C. The Owenses' First Assignment of Error

{¶ 26} In their first assignment of error, the Owenses assert the trial court erred in finding that their claim for spoliation of evidence was barred on the basis that a party to a primary, first party action is limited to bringing a claim for spoliation against a third party

in the primary action only. We previously found in addressing the second assignment of error that the trial court properly granted BRO's motion for summary judgment pursuant to Civ.R. 56(C). Therefore, due to our resolution of the second assignment of error, we find moot the Owenses' first assignment of error. App.R. 12(A)(1)(c).

## IV. Disposition

{¶ 27} For the foregoing reasons, the trial court did not err in granting BRO's motion for summary judgment pursuant to Civ.R. 56(C). Having overruled the Owenses' second assignment of error and determined the Owenses' first assignment of error is moot, we affirm the judgment of the Franklin County Court of Common Pleas.

*Judgment affirmed.*

BROWN, J., concurs.
BRUNNER, J., dissents.

---

BRUNNER, J., dissenting.

{¶ 29} I respectfully dissent from the decision of the majority. I would sustain both assignments of error and, on de novo review of the trial court's summary judgment, find that there are one or more material issues of fact that should be submitted to the factfinder. Accordingly, I would reverse and remand, ordering the trial court to vacate its decision on summary judgment.

{¶ 30} At issue is a cause of action for spoliation by an employer that has settled under the workers' compensation statutes with an employee for violation of one or more specific safety regulations ("VSSR").

> " '[C]auses of action for spoliation of evidence are designed to place responsibility and accountability on parties who were actually in possession of evidence that existed at one time but who later do not provide this evidence and do not provide an adequate explanation for failing to do so.' "

*Scheel v. Rock Ohio Caesars Cleveland, L.L.C.*, 8th Dist. No. 106531, 2018-Ohio-3568, ¶ 67, quoting *Wheatley v. Marietta College*, 4th Dist. No. 14CA18, 2016-Ohio-949, ¶ 105, quoting *Keen v. Hardin Mem. Hosp.*, 3d Dist. No. 6-03-08, 2003-Ohio-6707, ¶ 16.

{¶ 31} It appears from the record that Mr. Owens' employer, Bridgestone Retail Operations, LLC ("BRO"), had possession of the faulty tire rim but destroyed or discarded it at some point.  It is alleged that BRO willfully destroyed or discarded it prior to the VSSR settlement with Mr. Owens but after the separate product liability lawsuit was filed against the tire/rim manufacturer.  From the record, we cannot determine from the November 28, 2016 letter from the Owenses' counsel when the alleged spoliation actually occurred, or even when BRO first became aware that it was not in possession of the tire rim parts, or that BRO destroyed the tire rim either before or after the execution of the VSSR Settlement release signed by Mr. Owens.  Construing the evidence under Civ.R. 56(C), in a light most favorable to the Owenses that at some point the tire was destroyed, they should be permitted to proceed with discovery and submit evidence to a jury in an attempt to prove facts necessary to establish the intentional tort of spoliation by BRO.

{¶ 32} In its analysis, the majority did not address the question of whether any action for spoliation may exist in the context of workers' compensation and especially in the context of VSSR.  This question is a relevant one from two standpoints: (1) May a cause of action for intentional tort survive a workers' compensation settlement or award? and (2) Can it be waived, and if so, how?

{¶ 33} In *Murphy v. Certified Oil Corp.*, Franklin C.P. No. 14CV-2557, 2014 Ohio Misc. LEXIS 16857, *9-10 (Dec. 11, 2014), the Franklin County Court of Common Pleas found that, even in the context of a workers' compensation claim, Ohio recognizes a claim for spoliation of evidence as an independent tort.  *See Woodell v. Ormet Primary Aluminum Corp.,* 7th Dist. No. 03 MO 7, 2005-Ohio-4372, ¶ 55, citing *Smith v. Howard Johnson Co.*, *Inc.,* 67 Ohio St.3d 28 (1993).  In *Murphy,* the court found that recovery on such a claim requires proof of all of the following elements:

> "(1) [P]ending or probable litigation involving the plaintiff, (2) knowledge on the part of defendant that litigation exists or is probable, **(3) willful destruction of evidence by defendant designed to disrupt the plaintiff's case,** (4) disruption of the plaintiff's case, and (5) damages proximately caused by the defendant's acts."  Patriot Water Treatment, LLC v. Ohio Dep't. of Natural Resources, 10th Dist. No. 13AP-370, 2013-Ohio-5398, ¶ 16.

"In order to establish a spoliation claim, a plaintiff is required to show that a defendant 'willfully destroyed, altered or concealed evidence.' " Marok v. Ohio State Univ., 10th Dist. No. 13AP-12, 2014-Ohio-1184, ¶ 36, quoting Drawl v. Cornicelli, 124 Ohio App.3d 562, 567, 706 N.E.2d 849 (11th Dist.1997). **"[T]he concept of 'willfulness' contemplates not only an intentional commission of the act, but also a wrongful commission of the act."** Id., quoting Drawl. (Emphasis in original). "Ohio does not recognize a cause of action for negligent spoliation of evidence." Id.

(Emphasis added.) *Murphy* at *9-10.

{¶ 34} The common pleas court in *Murphy*, quoting *Drawl v. Cornicelli,* 124 Ohio App.3d 562, 567 (11th Dist.1997) from the Eleventh District Court of Appeals, held that the cause of action for spoliation is an independent intentional tort and does not arise from negligence. More importantly, the trial court stated in *Murphy* that it was not convinced "that the Worker's Compensation Act affords Defendant immunity from an intentional tort claim for spoliation of evidence." *Murphy* at *12. *Murphy* dealt with the destruction of video footage wherein the wrong footage had been saved and the needed footage destroyed within 30 days of the injury. Because there was no evidence in the record that "willful destruction" had occurred, in that the act was committed intentionally and wrongfully, the trial court granted partial summary judgment on the spoliation cause of action against the party bringing the action.

{¶ 35} I believe the trial court decision and the majority decision need not interpret and apply the language of the release in the VSSR workers' compensation case to determine whether the action for spoliation may go forward. Statute provides that intentional torts (such as a cause of action for spoliation) against the employer are not barred under R.C. 2745.01(A).[3] Because there is a statutory right to pursue an intentional tort claim against an employer under R.C. 2745.01, it must be expressly waived, and there is persuasive

---

[3] A statutory cause of action exists in addition to workers' compensation "for damages resulting from an intentional tort committed by the employer during the course of employment," such that "the employer shall not be liable unless the plaintiff proves that the employer committed the tortious act with the intent to injure another or with the belief that the injury was substantially certain to occur." R.C. 2745.01(A). In the case of the intentional tort of spoliation, the injury is the lack of access to the evidence that was destroyed or lost. *Patriot Water Treatment, LLC v. Ohio Dept. of Natural Resources*, 10th Dist. No. 13AP-370, 2013-Ohio-5398, ¶ 16.

authority to support this. In the context of waiver of rights under R.C. 2745.01 in collective bargaining agreements ("CBA"), the Eighth District Court of Appeals has recently stated that when the CBA "does not expressly cover employer intentional tort claims under R.C. 2745.01" arbitration is not required to pursue a claim under R.C. 2745.01. *Sinley v. Safety Controls Technology, Inc.*, 8th Dist. No. 109065, 2020-Ohio-4068, ¶ 24. Thus, without express mention of R.C. 2745.01 in the release Mr. Owens signed with BRO, we likewise should not find that the settlement language in the case under review precludes the Owenses from pursuing their statutory intentional tort in the form of a spoliation action against BRO.

{¶ 36} It still remains the Owenses' burden to show that the alleged spoliation of evidence is an intentional tort such that destruction of the tire rim was both intentional and wrongful. *Murphy* at *10, quoting *Drawl* at 567. Based on the facts in the record, these questions are for the jury, and summary judgment is not appropriate at this juncture.

{¶ 37} I would reverse the trial court's decision, and on de novo review, sustain the Owenses' two assignments of error for the reasons stated in this separate decision. I therefore respectfully dissent from the decision of the majority.

———————————————